**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AUTOSCRIBE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| STRIPE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Autoscribe Corporation ("Autoscribe" or "Plaintiff") hereby submits this Complaint for patent infringement against Defendant Stripe, Inc. ("Stripe" or "Defendant") and alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

### I.     THE PARTIES

1.      Autoscribe is a Corporation organized under the laws of the state of Maryland with its principal place of business at 12276 San Jose Blvd, Suite 624, Jacksonville, FL 32223, and offices at 9711 Washingtonian Blvd, Suite 440 Gaithersburg, MD 20878 and 360 NW 20th Terrace, Suite 205 Fort Lauderdale, FL 33309.

2.      Stripe is a corporation organized under the laws of Delaware. Stripe can be served through its registered agent: the Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

### II.     JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

4.      This Court has general personal jurisdiction over Defendant because Defendant is organized and existing under the laws of the State of Delaware.

5.      Venue is proper in the District of Delaware under 28 U.S.C. § 1400(b) because Defendant is incorporated in the State of Delaware and the District of Delaware is the sole judicial district within the State of Delaware. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270, 137 S. Ct. 1514, 1521 (2017) (holding that, "[a]s applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation").

### III.     BACKGROUND

6.      Fraud in credit cards and other financial transactions is a major problem, particularly in the online marketplace. Considerable resources are devoted to securing credit card and other account information provided to online merchants by payers. A single breach of security incident can compromise millions of credit card accounts, and such breaches are reported on a regular basis. As such, customers' financial data are sensitive in nature and are subject to strict regulations. Companies that fail to adequately protect customers' credit card data may face significant legal and regulatory consequences.

7.      Autoscribe is a leading financial services company and payment processor, currently processing more than $2 billion in transactions annually and servicing thousands of financial institutions and corporate billers across the nation. As part of its mission, Autoscribe has invested significant resources and capital into developing new technologies to facilitate transactions and assist billers in meeting their compliance needs while minimizing costs and complexity.

8.      Autoscribe has protected these technologies with a robust and growing patent portfolio.

9.      On April 4, 2023, the United States Patent and Trademark Office ("USPTO") duly

and legally issued United States Patent No. 11,620,621 ("the '621 Patent", attached as Exhibit A), titled "Enrolling a payer by a merchant server operated by or for the benefit of a payee and processing a payment from the payer by a secure server." The '621 Patent is valid and enforceable.

10. On November 4, 2025, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 12,462,234 ("the '234 Patent", attached as Exhibit B) (together with the '621 Patent, "the Asserted Patents"), titled "Processing a payment, by a secure computing system, from a payer to a payee operating a merchant computing system." The '234 Patent is valid and enforceable.

11. The Asserted Patents are directed to "systems and methods for obtaining and using account information to process financial payments."

12. Autoscribe is the original applicant and the sole and exclusive owner of all rights, title, and interest in the Asserted Patents, including the sole and exclusive right to prosecute this action, to enforce the Asserted Patents against infringers, to collect damages for past, present and future infringement of the Asserted Patents, and to seek injunctive relief as appropriate under the law.

13. Autoscribe has complied with any marking requirements under 35 U.S.C. § 287 with regard to the Asserted Patents.

14. Defendant is a financial services company that mainly provides payment processing services and solutions. It processes approximately $1.4 trillion of payments annually (equivalent to around 1.3% of global GDP), and a significant portion of its revenues are based on sales volume generated from its customers' daily sales and through various transaction-based fees for its payment processing technologies (for example, for its standard pricing model, Defendant charges 2.9% plus 30¢ per successful transaction for domestic cards).

15.     As discussed in greater detail below, Defendant provides and uses processing solutions (including its "Elements," "Checkout," and "Payment Links" products, or products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs) that are covered by the Asserted Patents.

16.     Defendant competes directly against Autoscribe (including through its "Elements," "Checkout," and "Payment Links" products, and its products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs), causing Autoscribe to lose significant profits.

17.     Accordingly, Defendant's infringement, as described below, has injured, and continues to injure Autoscribe.

18.     Autoscribe has provided notice of its Asserted Patents and Defendant's infringement of the same via a letter to Defendants which was delivered on December 12, 2025.

## IV.     COUNT I: INFRINGEMENT OF THE '234 PATENT

19.     Autoscribe incorporates each of the allegations of Paragraphs 1–18 above.

20.     Defendant has directly infringed and continues to directly infringe the '234 Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products or services that practice one or more claims of the '234 Patent.

21.     Defendant is not licensed or otherwise authorized to make, use, offer for sale, sell or import any products or services that embody the inventions of the '234 Patent in the United States.

22.     Defendant has and continues to directly infringe one or more claims of the '234 Patent, including, for example, claim 1, either literally or under the doctrine of equivalents, by performing, or directing or controlling the performance of, or by forming part of a joint enterprise that performs every step of the claimed method in violation of 35 U.S.C. § 271.

23.     Defendant's infringing services include, for example, the services Defendant

provides through its "Elements," "Checkout," and "Payment Links" products, and its products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs, as well as any other similar methods performed by Defendant (collectively, the "Infringing Methods"), including the first transaction and all following transactions performed with financial account information gathered using the infringing services.

24.    For example, Representative Claim 1 of the '234 Patent claims:

> A method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers, the method comprising:
>
>> providing, by the one or more secure servers to a merchant server providing a webpage to a payer computing system used by the payer, an application programming interface (API) that:
>>
>> provides financial account registration and token retrieval functions that can be executed to process the payment transaction;
>>
>> provides access to the financial account registration and token retrieval functions to the merchant server;
>>
>> receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee;
>>
>> authenticates the payee; and
>>
>> executes the financial account registration function, upon initiation by the merchant server, by:
>>
>>> generating a uniform resource locator (URL), for establishing an encrypted connection via the internet between the secure server and the payer computing system, the URL comprising either: a dynamic URL generated by the secure server for the payer and the payee; or a static URL

and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee;

establishing the encrypted connection, in response to an HTTP request for the generated URL, between the secure server and the payer computing system;

outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form that provides functionality for the payer to provide sensitive financial account information associated with a financial account; and

outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server, via the encrypted connection;

receiving the sensitive financial account information provided by the payer via the encrypted connection;

storing the sensitive financial account information in a secure storage location and performing each software process required to maintain compliance with one or more information security standards;

executing a token retrieval function, upon initiation by the merchant server via the API, by:

providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server; and

processing the payment transaction using the sensitive financial account information, without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic

data token to the payer, by generating and transmitting an electronic request requesting that at least a portion of the payment amount from the financial account be forwarded to the payee.

25.     Through its "Elements," "Checkout," and "Payment Links" products, and its products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs, Defendant performs (either itself, or by directing or controlling others to perform, or as part of a joint enterprise) a method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers and meeting every element of Claim 1 (either literally or under the doctrine of equivalents). The figure below is an excerpt from Defendant's documentation providing an overview of the purpose of the "Elements" product, which is selected as a representative product among Defendant's Infringing Methods:[1]



## Stripe Web Elements

### Create your own checkout flows with prebuilt UI components.

Stripe Elements is a set of prebuilt UI components for building your web checkout flow. It's available as a feature of Stripe.js 🔗, our foundational JavaScript library for building payment flows. Stripe.js tokenizes sensitive payment details within an Element without ever having them touch your server.

- Global payment methods: Access to over 100 global payment methods, including wallets like Apple Pay.
- Link: Help your customers check out faster by letting them select a saved payment method at checkout instead of entering payment information.
- Saved payment methods: Save, reuse, and manage cards and bank accounts with built-in features.

26.     Defendant provides, by the one or more secure servers to a merchant server providing a webpage to a payer computing system used by the payer, an application programming

---

[1] https://docs.stripe.com/payments/elements (last visited November 17, 2025).

interface (API). This is shown by, for example, the following excerpt from Defendant's documentation for its Elements product:[2]



27.    It provides financial account registration and token retrieval functions that can be executed to process the payment transaction, and it provides access to the financial account registration and token retrieval functions to the merchant server. This is shown by, for example, the portions of Defendant's documentation discussed in Paragraphs 30 and 33 (below).

28.    It receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee. This is shown by, for example, the "name" or "email" used to create a customer (or the "CUSTOMER_ID") and the "amount" used to create a PaymentIntent:[3]

---

[2] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#set-up-stripe (last visited November 17, 2025)

[3] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-create-a-customer (last visited November 17, 2025); https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#create-the-paymentintent (last visited November 17, 2025)





29.    It authenticates the payee. This is shown by, for example, the process of "register[ing] for a Stripe account" and the "API key" / "secret key" that Defendant provides to

the merchant:[4]





30.    It executes the financial account registration function, upon initiation by the merchant server, by:

---

[4] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#set-up-stripe (last visited November 17, 2025); https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#create-the-paymentintent (last visited November 17, 2025).

a. (i) Generating a uniform resource locator (URL), for establishing an encrypted connection via the internet between the secure server and the payer computing system, the URL comprising either: a dynamic URL generated by the secure server for the payer and the payee; or a static URL and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee. This is shown by, for example, the URL returned upon an API call to the "https://api.stripe.com/v1/checkout/sessions" endpoint or by, for example, the following excerpt from Defendant's documentation:[5]



b. (ii) Establishing the encrypted connection, in response to an HTTP request for the generated URL, between the secure server and the payer computing system. This is shown by, for example, the HTTPS connection that is established with Stripe:[6]

---

[5] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-collect-payment-details (last visited November 17, 2025).
[6] *Id.*

11

> **5  Collect payment details**  `Client-side`
>
> Collect payment details on the client with the **Payment Element**. The Payment Element is a prebuilt UI component that simplifies collecting payment details for a variety of payment methods.
>
> The Payment Element contains an iframe that securely sends payment information to Stripe over an HTTPS connection. Avoid placing the Payment Element within another iframe because some payment methods require redirecting to another page for payment confirmation.
>
> If you do choose to use an iframe and want to accept Apple Pay or Google Pay, the iframe must have the **allow** attribute set to equal `"payment *"`.
>
> The checkout page address must start with `https://` rather than `http://` for your integration to work. You can test your integration without using HTTPS, but remember to **enable it** when you're ready to accept live payments.

    c.    (iii) Outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form that provides functionality for the payer to provide sensitive financial account information associated with a financial account. This is shown by, for example, the "prebuilt UI" that "collect[s] payment details for a variety of payment methods":[7]

> **5  Collect payment details**  `Client-side`
>
> Collect payment details on the client with the **Payment Element**. The Payment Element is a prebuilt UI component that simplifies collecting payment details for a variety of payment methods.
>
> The Payment Element contains an iframe that securely sends payment information to Stripe over an HTTPS connection. Avoid placing the Payment Element within another iframe because some payment methods require redirecting to another page for payment confirmation.
>
> If you do choose to use an iframe and want to accept Apple Pay or Google Pay, the iframe must have the **allow** attribute set to equal `"payment *"`.
>
> The checkout page address must start with `https://` rather than `http://` for your integration to work. You can test your integration without using HTTPS, but remember to **enable it** when you're ready to accept live payments.

---

[7] *Id.*

d.  (iv) Outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server, via the encrypted connection. This is shown by, for example, the "Payment Element" "securely send[ing] payment information to Stripe over an HTTPS connection":[8]



31.    Defendant receives the sensitive financial account information provided by the payer via the encrypted connection. This is shown by, for example, the "Payment Element" "securely send[ing] payment information to Stripe over an HTTPS connection."[9]

32.    Defendant stores the sensitive financial account information in a secure storage location and performs each software process required to maintain compliance with one or more information security standards. This is shown by, for example, Defendant's PCI Service Provider

---

[8] *Id.*
[9] *Id.*

Level 1 certification, and Stripe's "Card Data Vault":[10]



# Security at Stripe

## Learn how Stripe handles security.

✧ Ask about this page    📋 Copy for LLM    ℍ View as Markdown

PCI 4.0 released
PCI DSS v4.0 replaces v3.2.1 effective March 31, 2024. Stripe can help you understand how the requirements for demonstrating your compliance might change. Read our Guide to PCI compliance to get started.

Our users trust Stripe with their sensitive data and rely on us to be good custodians of their customers' data as well. As a payments infrastructure company, our security posture continually evolves to meet the rigorous standards of the global financial industry.

### Standards and regulations compliance

Stripe uses best-in-class security practices to maintain a high level of security.

#### PCI-certified

A PCI-certified auditor evaluated Stripe and certified us to PCI Service Provider Level 1. This is the most stringent level of certification available in the payments industry. This audit includes both Stripe's Card Data Vault (CDV) and the secure software development of our integration code.

33.     Defendant executes a token retrieval function, upon initiation by the merchant server via the API, by: providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server; and processing the payment transaction using the sensitive financial account information, without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer, by generating and transmitting an electronic request requesting that at least a portion of the payment amount from the financial account be forwarded to the payee. This is shown by, for example, Defendant's ability to save "PaymentMethods" to a "Customer object" and provide object identifiers to the merchant server, and by Defendant "complet[ing] the payment using

---

[10] https://docs.stripe.com/security (last visited November 17, 2025).

details from the Payment Element":[11]



34.    To the extent any step of a claim is performed by some party other than the Defendant, such performance is attributable to Defendant, including because Defendant directs or controls such the third party's performance because the third party is acting as an agent of Defendant or is under contract with Defendant regarding such performance, or because Defendant conditions the third party's participation in a transaction or receipt of a benefit on such performance. In the alternative, such performance is attributable to Defendant because Defendant forms a joint enterprise with the third party.

35.    The acts of infringement by Defendant have caused damage to Autoscribe, and

---

[11] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-submit-payment (last visited November 17, 2025); https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#charge-saved-payment-method (last visited November 17, 2025).

Autoscribe is entitled to recover from Defendant the damages sustained by Autoscribe as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of Autoscribe's exclusive rights under the '234 Patent by Defendant has damaged and will continue to damage Autoscribe, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

36.    Defendant's infringement of the '234 Patent has been willful and continues to be willful. In addition, or in the alternative, at least as early as its receipt of this Complaint, Defendant has had knowledge of the '234 Patent and written notice of the infringement, and its infringement has been willful at least as of that date. Autoscribe intends to seek discovery on the issue of willfulness and reserves the right to seek a willfulness finding and increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## V.    COUNT II: INFRINGEMENT OF THE '621 PATENT

37.    Autoscribe incorporates each of the allegations of Paragraphs 1–18 above.

38.    Defendant has directly infringed and continues to directly infringe the '621 Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products or services that practice one or more claims of the '621 Patent.

39.    Defendant is not licensed or otherwise authorized to make, use, offer for sale, sell or import any products or services that embody the inventions of the '621 Patent in the United States.

40.    Defendant has and continues to indirectly infringe one or more claims of the '621 Patent, including, for example, claim 15, either literally or under the doctrine of equivalents, by allowing merchants to use services that enable a claimed method and apparatus in violation of 35 U.S.C. § 271.

41.    Defendant's infringing services include, for example, the services Defendant provides through its "Elements," "Checkout," and "Payment Links" products, or products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs, as well as any other similar methods performed by Defendant, including the first transaction and all following transactions performed with financial account information gathered using the infringing services.

42.    For example, Representative Claim 15 of the '621 Patent claims:

A method of enrolling a payer by a merchant server operated by or for the benefit of a payee, the method comprising:

providing a webpage to a payer computing system used by a payer;

receiving enrollment data identifying the payer;

providing, to a secure server via an application programming interface (API) provided by the secure server, at least one data element associated with the payer and a payment amount from the payer to the payee;

displaying a window or frame within the webpage provided to the payer computing system;

providing authentication credentials to the API to establish an authenticated session, the authentication credentials identifying the payee and authenticating the payee;

initiating a financial account registration function of the API during the authenticated session, the financial account registration function:

establishing a secure socket layer connection between the secure server and the payer computing system within the window or frame;

outputting instructions to the payer computing system to render a financial account registration request form, within the window or frame, that provides functionality for the payer to provide sensitive financial account information associated with a financial account; and

outputting instructions to the payer computing system to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server, via the secure socket layer connection, without providing the sensitive financial account information to the merchant server;

initiating a token retrieval function of the API during the authenticated session, the token retrieval function outputting a non-sensitive electronic data token representing the sensitive financial account information to the merchant server;

receiving the non-sensitive electronic data token from the secure server, wherein the merchant server does not receive the sensitive financial account information represented by the non-sensitive electronic data token and the secure server does not provide the non-sensitive electronic data token to the payer;

storing the non-sensitive electronic data token in association with the enrollment data identifying the payer; and

processing a payment from the payer by generating a payment transaction instruction, using the token retrieval function of the API, that includes a representation of the non-sensitive electronic data token and instructs the secure server to generate and transmit an electronic request requesting the payment amount from the financial account, obtain the payment amount, and forward at least a portion of the payment amount.

43. By providing its "Elements," "Checkout," and "Payment Links" products, and its products otherwise using the Stripe "Checkout Sessions" or "PaymentIntents" APIs, Defendant contributes to and/or actively induces the performance of  (either itself, or by directing or controlling others to perform, or as part of a joint enterprise) a method of enrolling a payer by a merchant server operated by or for the benefit of a payee and meeting every element of Claim 15 (either literally or under the doctrine of equivalents). The figure below is an excerpt from Defendant's documentation providing an overview of the purpose of the "Elements" product, which is selected as a representative product among Defendant's Infringing Methods:[12]

---

[12] https://docs.stripe.com/payments/elements (last visited November 17, 2025).

**Stripe Web Elements**

Create your own checkout flows with prebuilt UI components.

Stripe Elements is a set of prebuilt UI components for building your web checkout flow. It's available as a feature of Stripe.js 🟨, our foundational JavaScript library for building payment flows. Stripe.js tokenizes sensitive payment details within an Element without ever having them touch your server.

- Global payment methods: Access to over 100 global payment methods, including wallets like Apple Pay.
- Link: Help your customers check out faster by letting them select a saved payment method at checkout instead of entering payment information.
- Saved payment methods: Save, reuse, and manage cards and bank accounts with built-in features.

44.    The merchant servers provide a webpage to a payer computing system used by a payer, for example, the "web checkout flow" that customers use to complete a "payment flow":[13]

**Stripe Web Elements**

Create your own checkout flows with prebuilt UI components.

Stripe Elements is a set of prebuilt UI components for building your web checkout flow. It's available as a feature of Stripe.js 🟨, our foundational JavaScript library for building payment flows. Stripe.js tokenizes sensitive payment details within an Element without ever having them touch your server.

45.    The merchant server receives enrollment data identifying the payer and provides, to a secure server via an application programming interface (API) provided by the secure server, at least one data element associated with the payer and a payment amount from the payer to the payee. This is shown by, for example, the "name" or "email" used to create a customer (or the

---

[13] *Id.*

"CUSTOMER_ID") and the "amount" used to create a PaymentIntent via the API:[14]



46.    The merchant server displays a window or frame within the webpage provided to

---

[14] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-create-a-customer (last visited November 17, 2025); https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#create-the-paymentintent (last visited November 17, 2025)

the payer computing system. This is shown by, for example, the portions of Defendant's documentation discussing how the "Payment Element contains an iframe" and "needs a place to live on your payment page."[15]

47.    The merchant server provides authentication credentials to the API to establish an authenticated session, the authentication credentials identifying the payee and authenticating the payee. This is shown by, for example, the process of providing an "API key" / "secret key":[16]



48.    The merchant server initiates a financial account registration function of the API during the authenticated session, by establishing a secure socket layer connection between the secure server and the payer computing system within the window or frame; outputting instructions to the payer computing system to render a financial account registration request form, within the window or frame, that provides functionality for the payer to provide sensitive financial account

---

[15] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-collect-payment-details (last visited November 17, 2025).
[16] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#create-the-paymentintent (last visited November 17, 2025).

information associated with a financial account; and outputting instructions to the payer computing system to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server, via the secure socket layer connection, without providing the sensitive financial account information to the merchant server. This is shown by, for example, the "prebuilt UI" that "collect[s] payment details for a variety of payment methods" and "securely sends payment information to Stripe over an HTTPS connection":[17]



49.     The merchant server initiates a token retrieval function of the API during the authenticated session, the token retrieval function outputting a non-sensitive electronic data token representing the sensitive financial account information to the merchant server. This is shown by, for example, Defendant's ability to save "PaymentMethods" to a "Customer object" and provide object identifiers to the merchant server:[18]

---

[17] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-collect-payment-details (last visited November 17, 2025).
[18] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-submit-payment (last visited November 17, 2025); https://docs.stripe.com/payments/save-during-

> If the payment succeeded, the card is saved to the Customer object. This is reflected on the PaymentMethod's customer [API] field. At this point, associate the ID of the Customer object with your own internal representation of a customer, if you have one. Now you can use the stored PaymentMethod object to collect payments from your customer in the future without prompting them for their payment details again.

> When you're ready to charge your customer off-session, use the Customer and PaymentMethod IDs to create a PaymentIntent. To find a payment method to charge, list the payment methods associated with your customer. This example lists cards but you can list any supported type [API].

```
Command Line                          Select a language    cURL ⌄   ⓘ 📋 ▷ ✦

$   curl -G https://api.stripe.com/v1/payment_methods \
>     -u "sk_test_51STUJjLHdblQCg79Yb1...Wvw7G5nzRh00lMVnivRF:" \
>     -d customer="{{CUSTOMER_ID}}" \
>     -d type=card
```

50.    The merchant server receives the non-sensitive electronic data token from the secure server, wherein the merchant server does not receive the sensitive financial account information represented by the non-sensitive electronic data token and the secure server does not provide the non-sensitive electronic data token to the payer. This is shown by, for example, the portion of the documentation cited in the previous paragraph.

51.    The merchant server stores the non-sensitive electronic data token in association with the enrollment data identifying the payer. This is shown by, for example, the portions of Defendant's documentation stating the IDs of the Customer object and PaymentMethod object should be associated with "your own internal representation of a customer":[19]

---

payment?payment-ui=elements#charge-saved-payment-method (last visited November 17, 2025).

[19] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#web-submit-payment (last visited November 17, 2025).

> If the payment succeeded, the card is saved to the Customer object. This is reflected on the PaymentMethod's customer ⓘ field. At this point, associate the ID of the **Customer** object with your own internal representation of a customer, if you have one. Now you can use the stored PaymentMethod object to collect payments from your customer in the future without prompting them for their payment details again.

52.     The merchant server processes a payment from the payer by generating a payment transaction instruction, using the token retrieval function of the API, that includes a representation of the non-sensitive electronic data token and instructs the secure server to generate and transmit an electronic request requesting the payment amount from the financial account, obtain the payment amount, and forward at least a portion of the payment amount. This is shown by, for example, the "payment_intent" which is created using parameters including the "customer", "payment_method," and "amount":[20]

```
$   curl https://api.stripe.com/v1/payment_intents \
>    -u sk_test_51SdKL15ml7tlRMnznT3...NZ6s2AvMTt00DjffrZhx: \
>    -d amount=1099 \
>    -d currency=usd \
>    # In the latest version of the API, specifying the `automatic_
>    -d "automatic_payment_methods[enabled]"=true \
>    -d customer="{{CUSTOMER_ID}}" \
>    -d payment_method="{{PAYMENT_METHOD_ID}}" \
>    -d return_url="https://example.com/order/123/complete" \
>    -d off_session=true \
```

53.     Defendant has and continues to indirectly infringe one or more claims of the '621 Patent by inducing and/or contributing to direct infringement of the '621 Patent by customers, importers, sellers, resellers, and users of the Infringing Methods. The direct infringers include, for example, Trova, Inc., Software Recycling, LLC, and Schullo All Natural Foods, LLC.[21]

---

[20] https://docs.stripe.com/payments/save-during-payment?payment-ui=elements#charge-saved-payment-method (last visited November 17, 2025).

[21] https://stripe.com/customers/all (last visited November 17, 2025); https://www.trova.io/pricing (last visited November 18, 2025); https://shop.recycled-software.com/ (last visited November 18, 2025); https://schullo.com/ (last visited November 18, 2025).

54.     Defendant has and continues to induce others to directly infringe, either literally or under the doctrine of equivalents, by, among other things, making, using, offering to sell, selling and/or importing into the United States, without authority, products or services that practice one or more claims of the '621 Patent.

55.     Defendant induced the infringement by others with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '621 Patent, but while at best, remaining willfully blind to the infringement.

56.     As discussed in Paragraphs 37–52, above, Defendant advertises the Infringing Methods, publishes specifications and promotional literature encouraging customers to implement and incorporate the Infringing Methods into end user products, creates and/or distributes user manuals for the Infringing Methods that provide instructions and/or encourage infringing use, and offers support and/or technical assistances to its customers that provide instructions on and/or encourage infringing use.

57.     Defendant encourages and facilitates its customers to infringe the '621 Patent by promoting the Infringing Methods, for example, providing documentation and in its documentation, encouraging its customers to use its products to "save customer payment methods on the Customer object for future use with the Payment Element's Saved Payment Method feature."[22]

58.     Defendant's customers that incorporate the Infringing Methods into other products and services (*e.g.*, Trova, Inc., Software Recycling, LLC, and Schullo All Natural Foods, LLC) each directly infringe the '621 Patent pursuant to Defendant's instructions and advertisements.

---

[22] https://docs.stripe.com/payments/save-customer-payment-methods (last visited November 17, 2025).

59.    Additionally, Defendant has and continues to contribute to the direct infringement of others, either literally or under the doctrine of equivalents, by, among other things, offering to sell or selling within the within the United States, components of a patented device or an apparatus for use in practicing the claimed method, constituting a material part of the invention.

60.    As discussed in Paragraphs 37–52, above, Defendant provides APIs and example code for the Infringing Methods that constitute a component of a patented device or an apparatus for use in practicing the claimed method.

61.    Defendant does this knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

62.    Defendant's customers that incorporate the APIs and example code into other products and services (*e.g.*, Trova, Inc., Software Recycling, LLC, and Schullo All Natural Foods, LLC) each directly infringe the '621 Patent.

63.    The acts of infringement by Defendant have caused damage to Autoscribe, and Autoscribe is entitled to recover from Defendant the damages sustained by Autoscribe as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of Autoscribe's exclusive rights under the '621 Patent by Defendant has damaged and will continue to damage Autoscribe, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

64.    Defendant's infringement of the '621 Patent has been and continues to be willful. In addition, or in the alternative, at least as early as its receipt of this Complaint, Defendant has had knowledge of the '621 Patent and written notice of the infringement, and its infringement has been willful at least as of that date. Autoscribe intends to seek discovery on the issue of willfulness

and reserves the right to seek a willfulness finding and increased damages under 35 U.S.C. § 284

and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## VI.    JURY DEMAND

65.    Autoscribe hereby demands a trial by jury on all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Autoscribe requests entry of judgment in its favor and against Defendant

as follows:

a)  A judgment in favor of Autoscribe that Defendant has directly infringed and is infringing
   one or more claims of the Asserted Patent, either literally or under the doctrine of
   equivalents;

b)  A judgment in favor of Autoscribe that Defendant has induced and/or contributed to
   infringement and/or is inducing and/or contributing to infringement of one or more claims
   of the Asserted Patent, either literally or under the doctrine of equivalents;

c)  An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Autoscribe for
   Defendants' infringement of the Asserted Patent in an amount according to proof at trial
   including enhanced damages pursuant to 35 U.S.C. § 284 (together with prejudgment and
   post-judgment interest), but no less than a reasonable royalty;

d)  An order permanently enjoining Defendant, its officers, agents, employees, and those
   acting in privity with it, from further direct and/or indirect infringement of the Asserted
   Patent;

e)  An award of costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by
   law; and

f)  Such other and further relief, whether legal, equitable, or otherwise, to which Autoscribe
   may be entitled or which this Court may order.

CONNOLLY GALLAGHER LLP

AHMAD, ZAVITSANOS &
MENSING, PLLC
Jason McManis
Colin Phillips
Michael Killingsworth
Chun Deng
Sean Healey
Thomas DelRosario
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
cphillips@azalaw.com
mkillingsworth@azalaw.com
cdeng@azalaw.com
shealey@azalaw.com
tdelrosario@azalaw.com

Dated: December 12, 2025

*/s/ Alan R. Silverstein*
Arthur G. Connolly, III (#2667)
Alan R. Silverstein (#5066)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
asilverstein@connollygallagher.com

*Attorneys for Autoscribe Corporation*